Roland W. MACK, Appellant,

v.

UNITED STATES, Appellee.

No. 6862.

District of Columbia Court of Appeals.

Argued July 19, 1973.

Decided Oct. 17, 1973.

William J. Daniel, Washington, D.C., appointed by this court, for appellant.

Garey G. Stark, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and Richard L. Cys, Asst. U. S. Attys., were on the brief, for appellee.

Before REILLY, Chief Judge, PAIR, Associate Judge, and HOOD, Chief Judge, Retired.

PAIR, Associate Judge:

Appellant was found guilty after a jury trial of carrying a dangerous weapon,[1] assault on a police officer[2] and unlawful possession of a narcotic drug.[3] On appeal it is contended that the court committed *plain error* in sustaining as valid a Fifth Amendment claim of privilege invoked by a witness called by the defense.

The facts were in sharp dispute. The government's evidence was that on March 13, 1972, about 10:30 p. m., Officer Freeman, while on duty in a marked police car, observed in the 700 block of Eighth Street, S.E., two men engaged in what he believed to be a narcotics transaction. Approximately 30 yards away at that time, the officer moved his car to within 15 feet of the two men when one of the men[4] turned, saw the police vehicle and placed money in his pocket. Officer Freeman got out of his car and approached the two men, later identified as appellant and one Hinton, and directed them to keep their hands in view. Appellant, however, reached into his pocket and pulled a gun which he pointed at the officer. Officer Freeman in turn drew his service revolver whereupon appellant fled into an alley.[5] At this point another policeman, Officer Elliott, came on the scene and pursued appellant down the alley, observing him throw away the gun and a plastic bag before he was overtaken and captured. A third policeman, Officer Godbee, who retrieved the weapon and the plastic bag, corroborated in substantial detail Officer Elliott's testimony. Both men were arrested and searched and, upon examination of the plastic bag, it was found to contain a narcotic drug. The men were then transported to the precinct station.

Appellant took the stand in his own defense. He denied participation in a narcotics transaction, denied possessing a pistol on the evening in question and denied assaulting a police officer. He stated that the first time he had seen either the weapon or the plastic bag of narcotics was when confronted with them at the precinct station. His testimony was that the police came up to him while he was on the street talking to an associate, a Mr. Al Henry, and stated they wanted to search him. Appellant admitted that he then turned and ran down the alley, with an officer in pursuit, but insisted that he stopped on command and that he was then handcuffed and frisked. He stated that he was repeatedly struck by a police officer, that he was then thrown into the police vehicle, and that the door was slammed on his leg. Appellant testified further that, upon arrival at the precinct station, he was again beaten and that the police had "trumped up" the assault charge because he wouldn't become an informer.

The defense then called as a witness Hinton who was present with appellant at

1. D.C.Code 1967, § 33–3204.

2. D.C.Code 1967, § 22–505.

3. D.C.Code 1967, § 22–502.

4. This man was later identified as Edward Hinton, the witness whose Fifth Amendment privilege is the nub of this appeal.

5. Officer Freeman took Hinton into custody for PIC. Hinton was never charged as a result of this incident.

the time of the arrest. Hinton, after answering preliminary questions, invoked, on the advice of counsel appointed for him, his Fifth Amendment privilege as to the events that transpired at the scene of the arrest. The court upheld this claim of privilege. The witness was then asked to testify as to what transpired at the precinct station post-arrest. The witness again invoked his Fifth Amendment privilege. The court, however, overruled the claim and the witness then testified that he did not see appellant assaulted at the precinct station. The witness was unable to corroborate appellant's allegations that the police "trumped up" the charges against him at the precinct station.

Appellant's sole contention of substance is that the trial court's ruling on Hinton's claim of privilege against self-incrimination was plain error since, as a result, he was allegedly denied a fair trial. Appellant's reasoning is that Hinton, if required to testify, would have supported the defense that appellant, at the time and place involved, neither possessed the pistol, assaulted a police officer, nor possessed the narcotics found in the plastic bag. He insists that Hinton would have corroborated his testimony in regard to the alleged use of excessive force at the time of the arrest.

■ This contention is of course based upon pure speculation and in our view the trial court was in a much better position to make a judgment as to whether such testimony—if given by Hinton—would have tended to incriminate him. The court instructed the jury in this connection as follows:

Now, I hope it will be sufficient for me to say to you at this point that a witness in the proceedings who is under subpoena such as was Mr. Hinton, if called upon to testify and he gives testimony which is or might be or could be of a self-incriminatory nature, he might

thereafter be prosecuted on the basis of his statements.

.    .    .    .    .    .

Mr. Hinton, as you heard, chose to follow the advice that was given to him and invoked, as he has a right to, his protection under the Fifth Amendment of the Constitution, which provides, in part, that no person shall be compelled to testify against himself or to give testimony against himself.

.    .    .    .    .    .

It was the view of this Court that to compel Mr. Hinton to testify about anything that he saw, participated in, or was present at in the 700 block of Eighth Street on the night in question could tend or might tend to incriminate him personally and for this reason the claim of privilege was sustained.

Significantly enough, appellant claims no infringement of *his* Fifth Amendment privilege against self-incrimination; *nor is* there even pretense that the record would support an inference of prosecutorial misconduct or that the government's case was buttressed by Hinton's exercise of the privilege against self-incrimination. *See* Namet v. United States, 373 U.S. 179, 188–191, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963). Significant also is the fact that the witness Hinton was called by appellant's trial counsel who interrogated him with full prior knowledge that the privilege would be invoked. *See* Bowles v. United States, 142 U.S.App.D.C. 26, 439 F.2d 536 (1970). *Compare with* Namet v. United States, *supra*.

■ It is difficult, therefore, to understand how appellant could have been denied a fair trial by Hinton's exercise of his right against self-incrimination. While it would no doubt have been the better practice for the court to have required the exercise of the privilege out of the presence of the jury, we cannot be unmindful that it was appellants' trial counsel who, over the government's vigorous objection, insisted

on calling Hinton as a witness. One cannot invite error and then complain of prejudice.[6] The thrust of recent Supreme Court decisions has been to protect a witness' Fifth Amendment rights and, in our view, the trial court's decision on the scope of the privilege was not plain error. *See* Murphy v. Waterfront Commission of New York, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed. 2d 678 (1964).

Thus it appears too clear for further discussion that no constitutional question is involved in this case and that, absent a demonstration of prejudicial error, the judgment of conviction must be and is

Affirmed.

---

6. Smith v. United States, D.C.App., 295 A.2d 64, 68 (1972).